# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Jorge Daniel Jimenéz Blancarte,

                Petitioner,     Case No. 19-13189

v.                           Judith E. Levy
                               United States District Judge

Luna Elizabeth Ponce Santamaria,

                               Mag. Judge David R. Grand
                Respondent.

_____/

## Opinion and Order Denying Petitioner's Request for Costs and Fees [25]

This is an international child abduction case brought under the Hague Convention and its implementing statutes, the International Child Abduction Remedies Act (ICARA). 42 U.S.C. §§ 11601–611. On January 3, 2020, the Court ordered the return of the parties' two minor children to Mexico. (ECF No. 3.) On January 15, 2020, the Court ordered the parties to implement a plan calling for the return of the minor children on January 25, 2020. (ECF No. 32.) All that remains before the Court is Petitioner's request for fees and costs. (ECF No. 25, PageID.194.)

Both parties filed supplemental briefing on this issue. (ECF Nos. 34, 35.) The Court finds that Petitioner's history of abuse against Respondent, which caused her to flee Mexico with the two minor children, renders any award of costs and fees clearly inappropriate. Petitioner's request is denied.

## I. <u>Legal Standard</u>

Article 26 of the Hague Convention provides: "Upon ordering the return of a child . . . the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child . . . to pay necessary expenses incurred by or on behalf of the applicant." Hague Convention on the Civil Aspects of International Child Abduction, Article 26, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 ("Hague Convention"). ICARA codifies—and in so doing, strengthens—this provision in U.S. law: "[a]ny court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses . . . unless the respondent establishes that such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3).

The Sixth Circuit has not addressed ICARA's fee award provision as it pertains to a district court ordering the return of a child. *See Pliego v. Hayes*, 843 F.3d 226, 238 (6th Cir. 2016) (holding only that ICARA does not require Circuit Courts to award fees incurred on appeal). As other courts recognize, ICARA mandates an award of fees and costs to a prevailing petitioner absent demonstration by a respondent that the proposed fees and costs were not necessary or that the award is clearly inappropriate. *See Rath v. Marcoski*, 898 F.3d 1306, 1310 (11th Cir. 2018); *Maynard v. Maynard*, No. 07-10155, 2007 WL 1869253, at *2 (E.D. Mich. June 28, 2007) (citing *Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004)). While ICARA provides "little definitive guidance" on the meaning or scope what is "clearly inappropriate," *Kufner v. Kufner*, No. 07-046, 2010 WL 431762, at *3 (D.R.I. February 3, 2010), the First Circuit describes this standard as a "broad caveat" to ICARA's mandatory language. *Whallon v. Lynn,* 356 F.3d at 140.

ICARA "retains . . . the equitable nature of cost awards . . . [such that] a prevailing petitioner's presumptive entitlement to an award of expenses is subject to the application of equitable principles by the district court." *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013)

(quoting *Moore v. Cty. Of Del.*, 586 F.3d 219, 221 (2d Cir. 2009)). The Second Circuit further explains that "absent any statutory guidance to the contrary, the appropriateness of such costs depends on the same general standards that apply when 'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'" *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

## II. Analysis

Because the Court ordered the return of the parties' minor children to Mexico, Respondent bears the burden of showing that an award of fees and costs to Petitioner would be clearly inappropriate. Because Respondent persuasively alleges that her flight from Mexico was driven by a history of domestic violence committed by Petitioner, she has met her burden: an award of fees and costs in this case would be clearly inappropriate.

### A. **Domestic Violence**

In its January 3, 2020 Opinion and Order, the Court found Respondent's allegations of Petitioner's physical and emotional violence towards her both "credible and concerning." (ECF No. 26, PageID.206.) To adjudicate Respondent's grave risk of harm defense, the Court held a

two-day evidentiary hearing, during which it heard from Petitioner, Respondent, Respondent's adult son, and the parties' oldest daughter. The Court found that the in-person testimony largely corroborated Respondent's narrative of Petitioner's abuse directed at her and her son. In January 2018, Petitioner physically assaulted Respondent. (ECF No. 18, PageID.100.) Respondent also described repeated, unwelcome sexual contact by Petitioner, which led her to move to a separate bedroom and to install a lock for her protection. (*Id.*) Yet Petitioner frequently attempted to force himself into her locked room. (*Id.*) Additionally, Petitioner physically assaulted Respondent's son in 2012 and banished him from the parties' home in 2016. (*Id.* at PageID.100.)

From her first filing in this case, Respondent has tied her decision to leave Mexico to the violence Petitioner inflicted on her: "It is due to these experiences, and Respondent's desire to protect her children, that she moved to Michigan." (*Id.*) In her response to Petitioner's request for costs and fees, Respondent again reiterated that her primary reason for leaving Michigan was Petitioner's violence. (ECF No. 34, PageID.278–279.)

The Court concluded in its January 3 order that Respondent's allegations did not demonstrate a grave risk of harm to the children as would be required to prove Respondent's affirmative defense under the Hague Convention. (ECF No. 26, PageID.212.) However, the history of abuse Respondent described can factor into the Court's analysis of whether a fee award under ICARA is "clearly inappropriate."

In weighing the appropriateness of a fees and costs award here, the most relevant equitable principle is the parties' relative contributions to Respondent's actions. Courts, in weighing whether an award of fees and costs is "clearly inappropriate," regularly consider the extent to which a petitioner bears responsibility for the circumstances of removal and later Hague Convention proceedings. *See, e.g., Whallon v. Lynn,* No. 00–11009, 2003 WL 1906174, at *4 (D.Mass. Apr. 18, 2003) (reducing fees in part "because both parties bear responsibility for the degree of enmity between them"), *aff'd,* 356 F.3d 138. Where, as here, a respondent's removal of a child from their country of habitual residence stems from domestic violence perpetrated by a petitioner against the respondent, courts have found both that the petitioner bears responsibility for the circumstances giving rise to the petition and that an award of fees and

costs is clearly inappropriate. *See Aly v. Aden*, No. 12-1960, 2013 WL 593420, at *20 (D. Minn. Feb. 14, 2013) (finding any award of expenses to the prevailing petitioner clearly inappropriate in part because the petitioner "was physically and verbally abusive toward respondent"); *Guaragno v. Guaraggno*, No. 09-187, 2010 WL 5564628, at *2 (N.D. Tex. Oct. 19, 2010) (finding that petitioner's physical abuse of respondent was "a significant factor" in reducing fee award), *adopted by* 2011 WL 108946 (N.D. Tex. Jan. 11, 2011); *Silverman v. Silverman*, No. 00-2274, 2004 WL 2066778, at *4 (D. Minn. Aug. 26, 2004) (petitioner's history of physical and mental abuse toward respondent contributed to finding that a fee award was "clearly inappropriate").

In *Souratger v. Lee Jen Fair*, the Second Circuit reviewed the equitable principle of comparative responsibility as developed by the above line of cases, concluding that "this concept is analogous to the equitable doctrine of unclean hands." 818 F.3d 72, 79 (2d Cir. 2016). The court explained that "the American legal system rightfully 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which [they] seek[] relief.'" *Id.* (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945) and

*Moore*, 586 F.3d at 221). The court held that a record of domestic violence

alone could support a finding that a fee award is clearly inappropriate:

> [B]ecause the respondent has shown that petitioner engaged in multiple, unilateral acts of intimate partner violence against her and that her removal of the child from the habitual country was related to that violence, and because there are no countervailing factors in the record in favor of the petitioner, an award of expenses would be 'clearly inappropriate.'

*Id.* at 80.

Although Respondent does not cite to any precedent on domestic

violence in this context,[1] the Court finds the above reasoning persuasive

---

[1] Respondent instead argues that Petitioner's violence demonstrates Respondent's "good faith" belief in the lawfulness of her actions. (*Id.* at PageID.278.) While some courts have held a good faith belief may render an award of fees and costs clearly inappropriate, they have done so in circumstances where the removing party believed their actions to be justified on the basis of legal authority or an agreement between the parties. *See, e.g., Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013) (finding an award of fees clearly inappropriate where the removing parent had a good faith basis, grounded in multiple Turkish court orders, that she could legally take the children to the United States); *Mendoza v. Silva*, 987 F.Supp.2d 910, 914 (N.D. Iowa 2014) (noting a respondent's "good faith belief that the parties had agreed that [the respondent] would take the children to the United States where they would attend school"). Unlike these cases, Respondent does not point to any legal authority or agreement she believed justified her actions; instead, she argues that she "was unaware of the legal requirements and case interpretation of the controlling statu[t]es that would apply in her case." (ECF No. 34, PageID.279.) Ignorance of the law is not enough to show a "good faith" exception to ICARA's fee requirement.

and follows its logic here. Respondent presents detailed allegations regarding Petitioner's history of domestic violence towards her and cites that history as her reason for fleeing Mexico with her two minor children. Like in *Souratger*, the abuse in this case was both repeated and unilateral. Equity strongly favors a finding that an award of fees and costs is clearly inappropriate.

### B. <u>Financial Circumstances</u>

Petitioner does not point to any countervailing equitable principles that would outweigh the Court's findings of domestic violence in this case. Petitioner focuses his argument on Respondent's financial capacity without addressing Respondent's allegations of domestic violence or her motives for leaving. (ECF No. 34, PageID.279.) Respondent argues that she "remains unemployed and has no financial resources to pay for the fees and costs that petitioner is requesting." (ECF No. 34, PageID.280.)

However, as the Second Circuit held in *Souratger*, financial capacity "can never be a *countervailing* factor to intimate partner violence in a case like the one before us—it would remain clearly inappropriate to order a victim of intimate partner violence to pay an expenses award to the perpetrator, absent countervailing equitable

factors, even where the victim is wealthy." 818 F.3d at 74–75 (emphasis in original). Thus, while courts have held that "the financial plight of the respondent is an important factor to consider," *Khalip v. Khalip*, No. 10-13518, 2011 WL 13217631 (E.D. Mich. Aug. 9, 2011) (citing *Kufner v. Kufner*, 2010 WL 431762, at *3), the Court need not decide whether Respondent's allegations regarding her financial status would independently support a finding that an award of $14,012.98 to Petitioner is clearly inappropriate. It is enough that Respondent's financial status does not—and cannot—outweigh the import of the Petitioner's history of unilateral domestic violence against Respondent.

Petitioner also argues that his reduced request for fees and costs renders his request not "clearly inappropriate." Petitioner does not seek fees or costs arising from his retainment of separate counsel in Mexico with whom his counsel here conferred, lodging, travel, and food for the Court-ordered return trip, lost wages, and translation of court-related documents. (ECF No .35, PageID.287.) However, as with arguments pertaining to Respondent's financial capacity, this argument does not and cannot outweigh Petitioner's history of unilateral domestic violence.

*Souratger*, 818 F.3d at 74–75. Whether Petitioner requests ten dollars or ten thousand, an award of fees and costs is clearly inappropriate.

Neither party raises any other equitable factor for the Court to consider. Weighing the equitable principles presented, and without any countervailing factors, the Court finds that Petitioner's domestic violence against Respondent, which caused her to flee Mexico with her two minor children, renders an award of fees and costs clearly inappropriate. Both parties will absorb their own fees and costs related to this litigation, and Petitioner will bear the cost of the children's travel back to Mexico.

## III. Conclusion

For the reasons stated above, Petitioner's request for costs and fees is **DENIED**.

IT IS SO ORDERED.

Dated: January 28, 2020          s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, January 28, 2020, using the Electronic Court Filing system and/or first-class U.S. mail.

s/William Barkholz
Case Manager